IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PATRICIA BARRETT *et al.*,    *

    Plaintiffs    *

v.    *

                                                     CIVIL NO. JKB-18-3911

A.W. CHESTERTON CO. *et al.*,    *

    Defendants    *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM AND ORDER

### *I. Background*

This suit alleging personal injury and wrongful death caused by mesothelioma was filed April 4, 2018, in the Circuit Court for Baltimore City, Case No. 24-X-18-000150. (Compl., ECF No. 1-2.) The case was brought against Westinghouse and thirty other Defendants by the decedent's family members: Patricia Barrett, individually and as administratrix of the estate of Vincent James Barrett, Jr.; Karen Weddle; Laura Rollins; Jennifer Harrison; Christopher Barrett; and the Estate of Traci Ward. Plaintiffs alleged that Mr. Barrett's "exposure to asbestos and asbestos-containing products and/or machinery [that] required the use of asbestos and/or asbestos-containing products . . . may have occurred while [he was] working on, inspecting, maintaining and constructing ships at the Coast Guard Yard at Curtis Bay, Maryland." (*Id.* ¶ 4.) The complaint provided no time frame during which Mr. Barrett may have been exposed to asbestos, nor did it provide any specifics as to products to which he was exposed or identify ships on which he may have worked. Further, Plaintiffs alleged,

> In order to comply with the statute of limitations, the Plaintiffs have sued all those corporations that the Plaintiffs and their counsel believe, in good faith, may be responsible for the Plaintiffs' injuries. Once discovery in this case is

complete, the court and jury will determine whether the proof as to the liability of any or all of the named corporations is adequate.

(*Id.* ¶ 2.)

On December 18, 2018, Defendant CBS Corporation ("Westinghouse") removed the case to this Court within thirty days of receiving information in discovery that led it to conclude it was entitled to claim the federal officer defense. (Notice of Removal, ECF No. 1.) The removing Defendant states that it is "(a Delaware corporation f/k/a Viacom Inc.) [and] is a successor by merger to CBS Corporation (a Pennsylvania corporation f/k/a Westinghouse Electric Corporation)." (*Id.* 1 n.1.) Now pending before the Court is Plaintiffs' motion for remand (ECF No. 77) for which Westinghouse's opposition (ECF No. 80) and Plaintiffs' reply (ECF No. 82) have been filed. Plaintiffs contend Westinghouse did not timely remove the case and further assert Westinghouse is not entitled to the federal officer defense. Plaintiffs' arguments are without merit. No hearing is necessary. Local Rule 105.6 (D. Md. 2018). The motion will be denied.

## *II. Federal Officer Defense*

### *A. Applicable Legal Standard*

One sued in state court may remove a civil action to federal court under the statute that grants the federal officer defense, 28 U.S.C. § 1442(a):

> A civil action or criminal prosecution that is commenced in a State court and that is against or directed to any of the following may be removed by them to the district court of the United States for the district and division embracing the place wherein it is pending:
>
> (1) The United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office or on account of any right, title or authority claimed under any Act of Congress for the apprehension or punishment of criminals or the collection of the revenue.

2

Contractors who supply goods to the federal government may be entitled to claim this defense, sometimes referred to as the government contractor defense. To remove a case under § 1442(a)(1), a government contractor must show, *one*, it acted under a federal officer, *two*, it has a colorable federal defense, and *three*, the conduct for which a plaintiff alleges the contractor is liable was carried out for or in relation to the federal officer's authority. *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 254 (4th Cir. 2017). The Supreme Court recognized extension of the federal officer defense to government contractors in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988):

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512. "[W]hether the facts establish the conditions for the defense is a question for the jury." *Id.* at 514.

Although the *Boyle* case only dealt with design defects, the federal officer defense also applies to failure-to-warn cases. *See Ripley v. Foster Wheeler LLC*, 841 F.3d 207, 211 (4th Cir. 2016). To establish the defense in a failure-to-warn case, the government contractor must show the following elements:

> (1) the government exercised its discretion and approved certain warnings; (2) the contractor provided the warnings required by the government; [and] (3) the contractor warned the government about dangers in the equipment's use that were known to the contractor but not to the government.

*Sawyer*, 860 F.3d at 256 (alteration in original) (internal quotation marks omitted).[1]

---

[1] Oddly, Plaintiffs ignore the precedential value of *Ripley* when they argue the defense "is inapplicable in failure to warn cases like this one." (Pls.' Mot. Remand 3.)

3

A defendant removing a case based on the federal officer defense need only present a "colorable" defense; a defendant is not required to prove entitlement to the defense to justify removal. *See Mesa v. California*, 489 U.S. 121, 129 (1989); *Willingham v. Morgan*, 397 U.S. 402, 407409 (1969) ("The officer need not win his case before he can have it removed."). Thus, evaluation of the defense's viability is judged, at this point, under a plausibility standard similar to the plausibility standard for evaluating the adequacy of a complaint under Federal Rule of Civil Procedure 8(a). *See Willingham*, 395 U.S. at 408 (noting a removal petition must contain "a short and plain statement of the facts"); *Ellenburg v. Spartan Motors Chassis, Inc.*, 519 F.3d 192, 199 (4th Cir. 2008) (language in general removal statute, 28 U.S.C. § 1446(a), "is deliberately parallel to the requirements for notice pleading found in Rule 8(a) of the Federal Rules of Civil Procedure"). A defendant's theory of the case must be credited by the federal court for the purpose of determining the existence of the elements of the jurisdictional inquiry. *Willingham*, 395 U.S. at 432.

The Supreme Court has "rejected a 'narrow, grudging interpretation' of the [federal officer defense] statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Jefferson Cty., Ala. v. Acker*, 527 U.S. 428, 431 (1999) (quoting *Willingham*, 395 U.S. at 407). Consequently, "the right of removal conferred by § 1442(a)(1) is to be broadly construed." *Kolibash v. Comm. On Legal Ethics*, 872 F.2d 571, 576 (4th Cir. 1989). In particular, the statute's phrase "acting under [a federal] officer" "is 'broad' and is to be 'liberally construed' in favor of the entity seeking removal." *Sawyer*, 860 F.3d at 255 (quoting *Watson v. Philip Morris Cos.*, 551 U.S. 142, 147 (2007)). As a result, "courts have unhesitatingly treated the 'acting under' requirement as satisfied

where a contractor seeks to remove a case involving injuries arising from equipment that it *manufactured for the government.*" *Id.*

The phrase "for or relating to an act under color of [federal] office" in the statute applies when the contractor can establish "'a connection or association between the act in question and the federal office.'" *Id.* at 258 (quoting *Papp v. Fore-Kast Sales Co.*, 842 F.3d 805, 813 (3d Cir. 2016)). The *Sawyer* Court noted that this phrase was amended in 2011 from its former wording, "for any act under color of [federal] office," thereby "'broaden[ing] the universe of acts' that enable federal removal." *Id.* (quoting H.R. Rep. 112-17, 6, 2011 U.S.C.C.A.N. 420, 425) (alterations in original).

### *B. Analysis*

To support its notice of removal, Westinghouse stated that the decedent's handwritten notation on documents tendered in discovery "identif[ied] the specific classes of Coast Guard vessels in whose engine compartments he was allegedly exposed to asbestos-containing insulation." (Notice of Removal ¶ 8.) Further, Westinghouse stated,

> Westinghouse acknowledges that it designed, manufactured, and supplied the Coast Guard with main propulsion turbines, turbine-generators, and/or turbine-driven forced-draft blowers which were installed on one or more ships of the specific classes of Coast Guard vessels identified by Mr. Barrett as the sources of his alleged shipboard asbestos exposure.

(*Id.* ¶ 9.) Additionally, it said,

> In all relevant aspects of its design, manufacture, and supply of turbines and/or turbine-driven forced-draft blowers to the Coast Guard for use aboard Coast Guard vessels, Westinghouse was acting under the detailed direction and control of one or more federal officers.
>
> More specifically, such equipment was designed, manufactured, and supplied according to precise, detailed specifications which were promulgated and/or heedfully approved or adopted by the Coast Guard and which, at all times relevant to this case, specifically and expressly dictated the use of asbestos-containing thermal insulation materials. Notably, the Coast Guard required the use

5

of such asbestos-containing materials despite the fact that it was, at all times relevant to this case, independently aware of asbestos-related health hazards.

(*Id.* ¶¶ 13, 14.)

Construing these statements in the light most favorable to Westinghouse, the Court concludes Westinghouse has plausibly established its turbines and related products were supplied to the Coast Guard for certain classes of ships in compliance with applicable military specifications, that those specifications required the use of asbestos in the equipment, and that the Coast Guard was fully aware of asbestos-related health hazards. Given the information supplied in discovery that Mr. Barrett worked on those classes of ships, thereby establishing a causal connection between his mesothelioma and Westinghouse's conduct, Westinghouse has plausibly asserted a colorable federal officer defense justifying removal of the case to federal court. The Court notes Westinghouse's opposition to Plaintiffs' motion for remand includes various items of evidence that support the allegations made in the notice of removal, but the Court need not consider them because the notice of removal itself satisfies the requirements of the removal statutes.

## III. Timeliness of Removal

### A. Applicable Legal Standard

Timely removal for assertion of the federal officer defense is required:

(1) The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

. . .

(3) Except as provided in subsection (c) [pertaining to diversity of citizenship], if the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from

6

which it may first be ascertained that the case is one which is or has become removable.

28 U.S.C. § 1446(b).

The Fourth Circuit has concluded that the initial thirty-day period of § 1446(b)(1) only applies "where an initial pleading reveals a ground for removal." *Lovern v. General Motors Corp.*, 121 F.3d 160, 162 (4th Cir. 1997). However, where the details revealing grounds for removal "are obscured or omitted, or indeed misstated" in the initial pleading, then the case is not removable, "and the defendant will have 30 days from the revelation of grounds for removal in an amended pleading, motion, order, or other paper to file its notice of removal . . . ." *Id.* Courts are not required "to inquire into the subjective knowledge of the defendant"; instead, a court may "rely on the face of the initial pleading and on the documents exchanged in the case by the parties to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." *Id.* A defendant does not bear the burden of conducting outside research to ascertain whether a case is removable. *Hurley v. Alltite Gaskets*, Civ. No. GLR-12-462, 2012 WL 4764901, at *2 (D. Md. Oct. 5, 2012), *aff'd by Hurley v. CBS Corp.*, 648 F. App'x 299 (4th Cir. 2016).

Moreover, a defendant is not required to guess if a case can be removed. The *Lovern* Court noted that the statute's requirement for grounds to appear on the face of the initial pleading in order to start the thirty-day clock running under § 1446(b)(1) is "consistent with the statute's incorporation of the standards of Rule 11 of the Federal Rules of Civil Procedure." 121 F.3d at 162-63.

> Under Rule 11, a defendant and his attorney who fail to make a reasonable inquiry into the legal and factual basis of an action prior to filing face sanctions. If a defendant were required to file a notice of removal within 30 days after the service of the initial pleading, even where that pleading did not reveal a ground for removal, he would often be faced with an intractable dilemma of either risking Rule 11

7

> sanctions for noticing removal without making an adequate inquiry or forgoing removal altogether. The statute did not intend to put a defendant to this choice.

*Id.* at 163.

### B. Analysis

Plaintiffs argue that Westinghouse did not timely remove the case. They contend "Westinghouse ignored . . . the requisite 'clues' in Plaintiffs' Complaint and [earlier] discovery responses that (arguably) supported removal." (Pls.' Mot. Remand 2.) They also argue that a defendant is required to elect removal even if a complaint is "vague." (*Id.* Mem. Supp. 5 (citing *Tolley v. Monsanto Co.*, 591 F. Supp. 2d 837, 846 (S.D. W. Va. 2008).) Plaintiffs' arguments on this point are at odds with the Fourth Circuit's standard that grounds for removal be apparent on the face of the initial pleading (or other document triggering a defendant's time for removal). The notion that a complaint possessing a "clue" in it to removal is sufficient to start the removal clock running is also at odds with the *Lovern* Court's statement that courts are not to inquire into a defendant's subjective knowledge. In addition, Plaintiffs' reliance on a mere "clue" to trigger removability suggests a defendant is then duty bound to undertake research to determine whether a case is removable. It bears repeating that a defendant is not required to conduct such research. Moreover, a vague complaint is not one that complies with the Rule 8(a) pleading standard as interpreted in *Iqbal v. Ashcroft*, 556 U.S. 662 (2009), and *Twombly v. Bell Atlantic Corp.*, 550 U.S. 544 (2007). The Court has reviewed the complaint and finds it vague to a point of not stating a claim for relief against any particular Defendant in this case. Mr. Barrett's alleged contact with asbestos in unidentified products during his employment as a shipfitter at the Coast Guard Yard is insufficient to put Westinghouse (or any other Defendant) on notice as to the particular conduct for which Plaintiffs seek to hold it liable.

As well, the April 30, 2018, Answers to Master Interrogatories are also vague and fail to make apparent that Westinghouse could remove the case to federal court. Plaintiffs rely on brief passages from that discovery document to support their claim of untimely removal:

> Mr. Barrett was exposed to asbestos while he worked as a shipfitter at the Curtis Bay Coast Guard Yard from approximately 1958 to 1964 and from 1966 to approximately 1985. In connection with his employment, Mr. Barrett used, worked with and/or was exposed to asbestos products that were manufactured, supplied and/or installed by the Defendants from 1958 to 1985.

(Ans. Master Interrog. No. 88, ECF No. 1-3.) Further, Plaintiffs averred in the same interrogatory answer:

> Plaintiffs' counsel is investigating Mr. Barrett's exposure to various products. Information obtained from co-workers, Mr. Barrett's employer and the Defendants may provide further evidence of Mr. Barrett's exposure. Consequently, *the information given here is preliminary and subject to change as a result of further discovery in this case.* Plaintiffs object to this Interrogatory to the extent that it requires Plaintiffs' counsel to investigate and disclose the precise information known by various witnesses or the precise witnesses Plaintiffs' counsel intends to call at trial.

(*Id.* (emphasis added).)

> Plaintiffs' counsel are still investigating Mr. Barrett's asbestos exposure, but believe that Mr. Barrett was exposed to asbestos while he worked at the Curtis Bay Coast Guard Yard. Mr. Barrett worked as a shipfitter on both ships being newly constructed as well as ships being repaired at Curtis Bay between 1958 and 1985. The Plaintiffs will supplement this answer in accordance with the Maryland Rules. In connection with his employment as a shipfitter, Mr. Barrett used, worked with and/or was exposed to asbestos products that were manufactured, supplied and/or installed by the Defendants from 1958 to 1985.

(*Id.* No. 89.)

These answers to discovery requests are equally vague and do not put Westinghouse on notice that it could assert the federal officer defense to Plaintiff's suit. They fail to include any particulars about specific products or specific ships or even classes of ships from which even a knowledgeable defendant could readily ascertain removability of the case. Plaintiffs' argument

9

that it is sufficient for removability to say that Mr. Barrett worked on Coast Guard ships and was exposed to asbestos products is unpersuasive.

Plaintiffs further assert that the complaint "expressly disclaimed" claims arising under federal law or from acts or omissions on a federal enclave or from acts or omissions of anyone acting under a federal officer. (*Id.* 2 (citing Compl. ¶ 4).) The Court notes this "express disclaimer" does not apply to "the claim of liability described" in the complaint. (*Id.*) Also noted is that the complaint lumps together all Defendants into a monolithic entity and does not distinguish among the individual Defendants while claiming they are all liable under theories of strict liability, breach of warranty, negligence, aiding and abetting, and conspiracy for failure to warn of asbestos's dangers and for their products' design defects due to their inclusion of asbestos in them. The "express disclaimer" is inconsistent with Plaintiffs' broad-brush pleading.

Finally, the Court finds no merit whatsoever in Plaintiffs' contention that Westinghouse removed the case for strategic reasons unrelated to subject-matter jurisdiction. For Plaintiffs to supply relevant details as to Westinghouse's alleged conduct so late in the proceeding is not adverse to Westinghouse, but to them.

## *IV. Conclusion*

The Court concludes Plaintiffs' motion to remand is without merit. Accordingly, it is hereby ORDERED the motion (ECF No. 77) is DENIED. By April 25, 2019, the parties shall file a joint report as to the status of responsive pleadings, the conduct of discovery, and amenability to a settlement conference to be conducted by a magistrate judge of this Court. If discovery is concluded, then the parties shall propose a briefing schedule for dispositive motions.

DATED this 12 day of April, 2019.

BY THE COURT:

*James K. Bredar*
James K. Bredar
Chief Judge